IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CENTER KHURASAN CONSTRUCTION COMPANY | * |
| | * |
|     Plaintiff, | * |
| v. | *     Civil Action No. 8:20-cv-01358-PX |
| | * |
| JS INTERNATIONAL, INC. | * |
|     Defendant. | * |
|     *** | |

## MEMORANDUM OPINION

Pending before the Court in this commercial construction dispute is Plaintiff Center Khurasan Construction Company ("Center Khurasan" or "Plaintiff")'s motion for default judgment against Defendant JS International, Inc. ("JSI"). Finding no hearing necessary, the Court GRANTS in part and DENIES in part Center Khurasan's motion. *See* D. Md. Loc. R. 105.6

### I.    BACKGROUND

Center Khurasan is a construction company based in Afghanistan with its principal place of business in Kabul. ECF No. 1 ¶ 1. Center Khurasan acted as a subcontractor on a project in Afghanistan between the prime contractor, JSI, and the United States Army. *See id.* ¶ 4. The parties formalized their arrangement in a written contract dated October 26, 2017 (the "Contractor Agreement"). *Id.*; *see also* ECF No. 1-1. The Contractor Agreement specified that Center Khurasan, as JSI's sub-contractor in Afghanistan, would be responsible for several aspects of the project including concrete delivery, logistics, and the installation of physical barriers. *See* ECF No. 1-1 at 1. In exchange, JSI agreed to pay Center Khurasan within a reasonable time after receiving invoices for Center Khurasan's completed work. *Id.* ¶ 2. The

Contractor Agreement also included a choice-of-law provision that made plain Afghan law would govern any disputes arising under the agreement. *Id.* ¶ 14.

At first, the arrangement went off without a hitch. Center Khurasan "performed high quality and dependable work," and JSI initially honored its promise to pay for that work in a timely fashion. *Id.* ¶ 6. In due course, however, JSI stopped making payments and incurred debt to Center Khurasan of $738,000.00 under the Contractor Agreement, evidently for work Center Khurasan performed with respect to Task Orders 14 and 15. *Id.* ¶ 7; *see also* ECF No. 1-1 at 4.

To address these monies owed, JSI and Center Khurasan entered into a "Payment Agreement" on March 20, 2019, in which JSI promised to make monthly payments of $64,362.13 for eight months (totaling $514,897.00) beginning April 20, 2019. *See* ECF No. 1-1 at 4; *see also* ECF No. 1-3 at 1. JSI, however, never honored the Payment Agreement, and Center Khurasan asserts it never received another penny of the amounts owed to it. ECF No. 1 ¶ 7.

The consequences have been nothing short of devastating for Center Khurasan. Without the anticipated revenue from the JSI contracts, Center Khurasan has been unable to pay its own vendors and employees. ECF No. 1 ¶ 8. Also because of JSI's default, Center Khurasan was left with no choice but to sell its machinery at less than half market rate to satisfy some of its vendor payments. *See id* ¶ 9. To make matters worse, Center Khurasan's owners have been physically threatened and aver that their lives are at risk. *Id.*; *see also* ECF No. 1-2.

Before filing suit in this Court, Center Khurasan contacted the United States Department of Defense to express its concerns about JSI's nonpayment. *See* ECF No. 1-1 at 5–6. At the Department's suggestion, *see id.*, Center Khurasan brought this action on June 1, 2020. The Complaint seeks damages for breach of contract as to the outstanding amounts due on the

Payment Agreement, as well as for consequential damages that resulted from Center Khurasan having to sell its equipment.  *See generally* ECF No. 1.

Because Center Khurasan was unable to serve process on JSI, despite attempting to do so on three occasions in both Maryland and Nevada, the Court granted Center Khurasan's motion for alternative service.  *See* ECF Nos. 4, 5.  The Clerk later entered default against JSI for its failure to plead or otherwise defend in this action.  ECF No. 7.  Center Khurasan then moved for default judgment.  ECF No. 10.  The Court denied Center Khurasan's motion without prejudice because neither the Complaint nor the motion provided the applicable substantive law.  ECF No. 11.  In response, Center Khurasan filed a renewed motion for default judgment, which includes relevant provisions of Afghan law.  *See* ECF No. 13.

## II.     STANDARD OF REVIEW

Generally, courts maintain "a strong policy that cases be decided on the merits."  *United States v. Schaeffer Equip. Co.*, 11 F.3d 450, 453 (4th 1993).  However, when a party against whom judgment is sought fails to plead or otherwise defend, Federal Rule of Civil Procedure 55 accords the Court discretion to grant default judgment.  *See* Fed. R. Civ. P. 55.  In reviewing such a motion, the Court takes as true the well-pleaded factual allegations of the complaint, other than those pertaining to damages.  *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

If the Complaint avers sufficient facts from which the Court may find liability, the Court next turns to damages.  *See Ryan*, 253 F.3d at 780–81.  The kinds of damages available in default are circumscribed by the Complaint.  *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").  The ultimate

damages request must be supported by evidence introduced either at a hearing or by affidavit or other records. *See S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 423 n.2 (D. Md. 2005); *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010).

### III. ANALYSIS

#### A. Applicable Substantive Law

The Court begins by determining which substantive law governs the breach of contract claims. Center Khurasan alleges breaches of the Contractor Agreement and Payment Agreement arising from JSI's failure to honor them. The Contractor Agreement makes plain that Afghan law applies to this dispute. As to the Payment Agreement, even though it does not include a choice-of-law provision, the doctrine of *lex loci contractus* compels the same result. *See generally Cunningham v. Feinberg*, 441 Md. 310 (2015). That doctrine instructs courts to "apply the law of the jurisdiction where the contract was made." *Id.* According to the Complaint, the contract was executed in Afghanistan. ECF No. 13 at 2. Thus, Afghan law governs both contracts. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (noting that a defendant admits to the plaintiff's well-pleaded factual allegations by failing to respond).

Ascertaining Afghan law is no simple task. *See, e.g.*, *Glob. Fleet Sales, LLC v. Delunas*, 203 F. Supp. 3d 789, 805 (E.D. Mich. 2016); *Koshani v. Barton*, 374 F. Supp. 3d 695, 710 (E.D. Tenn. 2019). Nonetheless, Federal Rule of Civil Procedure 44.1 permits courts to "consider any relevant material or source . . . whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. Center Khurasan has directed the Court to English translations for the entirety of Afghanistan's statutory law, including the laws applicable to commercial contracts. These translations were made available from Kakar Advocates—a law firm that has a "comprehensive grasp of laws and regulations pertaining to conducting business

4

in Afghanistan." *See generally* Kakar Advocates, https://kakaradvocates.com/about (last visited December 8, 2021). Thus, pursuant to Rule 44.1, the Court shall rely on the pertinent Afghan law to determine what damages, if any, are available to Center Khurasan.

### B.   Liability

Under Afghan law, a party that breaches its contractual obligations is liable to compensate the other party for damages incurred because of the breach. *See* Afghan Laws and Regulations, Karkar Advocates, https://kakaradvocates.com/afghan-laws-regulations (select drop-down menu for "Law on Commercial Contracts and Selling Property"; then download English translation). In this way, Afghan law on breach of contract appears to mirror American common law. *See* 11 Corbin on Contracts § 55.1 (2021).

When viewing the Complaint facts as true and most favorably to Center Khurasan, JSI owed Center Khurasan $738,000.00 under the Contractor Agreement. ECF No. 1 ¶ 7. To cure the default, the parties entered into the Payment Agreement, which required JSI to make eight monthly installments totaling $514,897.00. *See* ECF No. 1-1 at 4. Although the Payment Agreement references another payment that JSI would make within seven days, it does not specify the amount of that payment or provide any other necessary details that would permit this Court to award judgment. *See id.* The Complaint facts, accepted as true, also show that JSI "repeatedly promised and then broke its promises to pay" Center Khurasan after executing the Payment Agreement. ECF No. 1 ¶ 9. Thus, JSI breached both agreements.

### C.   Damages

While the present record is sufficient for the Court to determine that JSI is liable to Center Khurasan for breaching the Contractor Agreement and Payment Agreement, the record is

insufficient to support a damages award as to either.  Accordingly, Plaintiff's claims for direct and consequential damages fail as a matter of law.

"An allegation 'relating to the amount of damages' is not deemed admitted based on a defendant's failure to deny in a required responsive pleading." *Laborers' Dist. Council Pension v. E.G.S., Inc.*, No. WDQ-09-3174, 2010 WL 1568595, at *3 (D. Md. Apr. 16, 2010) (quoting Fed. R. Civ. P. 8(b)(6)).  Sworn affidavits and other like forms of documentary evidence are imperative to a successful damages award.  *See, e.g.*, *Trustees of Nat'l Elec. Benefit Fund v. Integrity Gen. Eng'g Contractors, Inc.*, No. 01360-PX, 2019 WL 7561245, at *3 (D. Md. Jan. 7, 2019) (awarding damages where the plaintiff submitted an affidavit from the party-in-interest, as well as copies of third-party audits); *Braxton-Grant Techs., Inc. v. C&C Int'l Computers & Consultants, Inc.*, No. ELH-18-195, 2018 WL 3068690, at *3 (D. Md. June 21, 2018) (awarding damages based, in part, on an affidavit from an executive of the plaintiff corporation); *Concentric Methods, LLC v. Cillian Techs., LLC*, No. DKC 11-1130, 2011 WL 6180143, at *2 (D. Md. Dec. 12, 2011) (awarding damages based, in part, on the affidavits of the plaintiff's chief financial officer and a spreadsheet that itemized the outstanding payments owed to plaintiff).

To be sure, the record shows that JSI owed Center Khurasan at least $514,897.00[1] pursuant to the Payment Agreement and that, as of October 23, 2019, *some* yet-to-be specified monies were still owed to Center Khurasan.  *See* ECF Nos. 1-1, 1-2.  But it is unclear whether

---

[1] The record, aside from Center Khurasan's unsubstantiated allegations, does not show that Center Khurasan was entitled to an additional $223,103.00 under either contract.  *Contra* ECF No. 13 at 2 (listing the sum certain as $738,000.00).  First, the Contractor Agreement does not include any specific payment amounts to be owed to Center Khurasan; the agreement states only that Center Khurasan must be paid "within a reasonable time after . . . submit[ting] an invoice."  ECF No. 1-1 at 1.  Yet Center Khurasan has neither furnished the relevant invoices to the Court nor submitted sworn testimony that such invoices went unpaid.  Second, the Payment Agreement addressed only an outstanding amount of $514,897.00.  *Id.* at 4.  Again, however, Center Khurasan has not produced extrinsic evidence that this sum went unpaid.

the outstanding payments were related to the Payment Agreement or to some other business arrangement.  Equally unclear from the record evidence is whether JSI paid any portion of what was owed under the Payment Agreement or whether it paid nothing at all.  *See generally* ECF No. 1-2 (email exchange between Center Khurasan and JSI discussing an unspecified amount of money owed).  The Court simply cannot rely on the Complaint's factual allegations to fill in these gaps.  *See* Fed. R. Civ. P. 55(b)(2).[2]  Accordingly, Center Khurasan's claim for direct damages must be denied.

So too for Center Khurasan's consequential damages claim.  Although Afghan law permits consequential damages when a party to a contract incurs loss that is "foreseeable at the time of concluding the contract," *see* Afghan Laws and Regulations, Karkar Adovcates, https://kakaradvocates.com/afghan-laws-regulations (select drop-down menu for "Law on Commercial Contracts and Selling Property"; then download English translation), the record is void of evidence that JSI had been placed on notice (and therefore could foresee) that its failure to pay the sums owed would compel Center Khurasan to sell its equipment.  *Cf. CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 429 Md. 387, 408 (2012) (defining consequential damages as those that were reasonably contemplated by both parties at the time of the contract's formation).  On this point, Center Khurasan presses that an email exchange with JSI demonstrates that JSI knew the financial hardship it had caused by refusing to pay the contract sums.  *See* ECF No. 1-2.  This email exchange, however, took place well after the parties had reached agreement on the job

---

[2] Center Khurasan's counsel, Stephen J. Stine, has also submitted a sworn declaration in support of the damages request.  ECF No. 13-2.  Although such a declaration is often necessary when the damages request includes attorneys' fees, it is of minimal value here.  *See, e.g.*, *De Aguilar v. Boeing Co.*, 11 F.3d 55, 57 (5th Cir. 1993) ("Clearly, the affidavit of a lawyer without personal knowledge of the extent of each of the plaintiffs' claims sheds little, if any, light on the actual amount in controversy."); *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154–55 (2d Cir. 1999) (holding that complaint allegations and an affidavit of plaintiff's counsel were insufficient evidence upon which to enter judgment).  Notably, the declaration was not authored by a principal or agent of Center Khurasan and it does not assert *personal* knowledge as to the specific payments that remain due to Plaintiff.  *See* ECF No. 13-2.

itself.  Thus, the email provides no proof that such losses were foreseeable at the time the contract was made.  Consequential damages, therefore, cannot be awarded.

The Court will provide Center Khurasan one final opportunity to supplement evidence as to damages no later than January 10, 2022.  If it fails to do so, the denial of damages shall stand and the case will be closed.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Center Khurasan's motion for default judgment as to liability and DENIES the motion as to damages.

A separate Order follows.

December 10, 2021                                                         /s/
Date                                                                        Paula Xinis
                                                                            United States District Judge